HAVOCO OF AMERICA, LTD., a
Delaware corporation, Plaintiff,

v.

HILCO, INC., a Tennessee corporation,
Elmer C. Hill, and Sumitomo Shoji
America, Inc., a New York corporation,
Defendants.

No. 81 C 419.

United States District Court,
N.D. Illinois, E.D.

Oct. 30, 1990.

Richard P. Campbell, Anthony S. DiVincenzo, Campbell & DiVincenzo, Paul B. Episcope, John C. Erb, Paul B. Episcope, Ltd.,

Chicago, Ill., for plaintiff Havoco of America, Ltd.

Ronald Butler, Michael A. Stick, Kevin J. O'Brien, Butler, Rubin, Newcomer, Saltarelli, Boyd & Krasnow, Chicago, Ill., for defendants Hilco, Inc. and Elmer C. Hill.

Sheldon Karon, Richard L. Horn, Barbara J. Mulvanny, Keck, Mahin & Cate, and Howard Joseph, Chicago, Ill., for defendant Sumitomo Corp. of America.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Plaintiff, Havoco of America, Ltd. ("Havoco"), has filed this diversity action against defendants Hilco, Inc. ("Hilco"), Elmer C. Hill ("Hill"), and Sumitomo Shoji America, Inc. ("Sumitomo").[1] Havoco's complaint, as amended, consists of seven counts and alleges a variety of claims. Specifically, Havoco charges all of the defendants with conspiracy to defraud (Count I), tortious interference with contractual relations (Count III), and fraud and deceit (Count IV). Havoco also alleges separate claims for breach of fiduciary duty against Hill (Count II), Sumitomo (Count V), and Hilco (Count VII). Finally, Havoco asserts a claim for breach of contract against Sumitomo only (Count VI).

Currently pending before the Court are four motions: Sumitomo's motion for summary judgment on Counts I, III, IV, and V of the fourth amended complaint; Havoco's motion for partial summary judgment against Sumitomo on Count VI of the fourth amended complaint; Sumitomo's motion for leave to file an amendment to its answer to the fourth amended complaint; and, the motion of Hill and Hilco for leave to file amended answers to include an additional affirmative defense to the fourth amended complaint. The Court will address each of these motions in turn. Before we do so, however, a discussion of

---

1. For the record, the Court notes that Sumitomo is inconsistently identified in the pleadings. Whereas Havoco, in its fourth amended complaint and in its briefs, consistently identifies Sumitomo as "Sumitomo Shoji America, Inc.," Sumitomo, in its own briefs, consistently identifies itself as "Sumitomo Corporation of America." Assuming that Havoco has incorrectly identified Sumitomo, Sumitomo should file a motion to amend the caption of the fourth amended complaint to correctly reflect Sumitomo's name.

the procedural history, facts, and prior rulings on appeal is in order.

## I. *Procedural History*

This case boasts of a rather long and tortuous procedural history. It has been assigned to five different judges on the district court level. In addition, it has been appealed to the Seventh Circuit twice. *See Havoco of America, Ltd. v. Hilco, Inc.*, 731 F.2d 1282 (7th Cir.1984) (*"Havoco I"*) and *Havoco of America, Inc. v. Hilco, Inc.*, 799 F.2d 349 (7th Cir.1986) (*"Havoco II"*). On each occasion, the Seventh Circuit discussed the procedural history and facts of this case in exhaustive detail. Accordingly, we recount only those facts necessary to dispose of the pending motions; for more elaborate detail, any curious parties may refer to *Havoco I* and *Havoco II.*

## II. *Facts*

In February 1975, Havoco entered into a contract to supply coal to the Tennessee Valley Authority ("TVA") over a ten-year period. In order to fulfill its obligations under the contract, Havoco entered into several related agreements with other parties. Havoco and Sumitomo executed a sales agency agreement, whereby Sumitomo would provide Havoco with financing for its TVA contract. In addition, Havoco engaged Hilco to provide professional services for Hill, the Havoco officer who handled the TVA contract. Havoco also entered into a coal purchase agreement with R & F Coal Company ("R & F Coal"). Finally, Havoco contracted with M/G Transport Services, Inc. ("M/G Transport") for transportation of the coal.

The coal supply contract between Havoco and TVA provided that either party was entitled to renegotiate the contract price of the coal within six months after execution of the contract. In August 1975, TVA exercised that right, and Havoco and TVA commenced negotiations as to the contract price of the coal. After several months, these negotiations ended unsuccessfully, and Havoco ultimately assigned its TVA contract to R & F Coal on March 19, 1976.

This series of events spawned a number of lawsuits. In 1976, M/G Transport filed a complaint against Havoco for monies allegedly due and owing to M/G Transport under its contract with Havoco. *M/G Transport Services, Inc. v. Havoco of America, Ltd.*, No. 76 C 2933 (N.D.Ill. 1976). Havoco, in turn, filed a counterclaim alleging that M/G Transport had breached its contract with Havoco. Neither M/G Transport's complaint nor Havoco's counterclaim named Sumitomo as a defendant. Ultimately, the parties settled this lawsuit.

In January 1978, Havoco filed suit against R & F Coal, Hill, Hilco, and others. *Havoco of America, Ltd. v. R & F Coal Company, et al.*, No. 78 C 83 (N.D.Ill. 1978). In that suit, Havoco alleged that R & F Coal breached the assignment contract by failing to pay royalties or commissions as required by the contract. Havoco also claimed that R & F Coal, Hill, and Hilco conspired to induce Havoco to enter into the assignment contract. After being appealed to the Seventh Circuit, this litigation resulted in Havoco settling with R & F Coal and reserving its right to pursue its claims against the other parties.

In January 1981, Havoco chose to exercise its right to pursue its claims against the other parties by filing this action. Naming only Hill and Hilco as defendants, Havoco's initial complaint alleged that these defendants conspired to coerce Havoco, through various tortious acts, to assign its TVA contract to R & F Coal. Although this initial complaint generally alleged that Sumitomo and others participated as co-conspirators in the alleged conspiracy, it did not name Sumitomo as a defendant, allege any wrongful conduct on the part of Sumitomo, or specify how Sumitomo "performed acts and made statements in furtherance of" the alleged conspiracy.

On March 26, 1981, several months after filing this suit, Havoco served Sumitomo with a non-party subpoena for the production of documents. Approximately one month later, on April 23, 1981, Havoco filed a motion for leave to amend its complaint to add Sumitomo as a party defendant. By order dated July 15, 1981, the court denied Havoco's motion because Havoco had incorrectly alleged that Sumitomo was an Illi-

nois corporation and, consequently, Havoco's attempted amendment would have destroyed diversity jurisdiction. *See* Mem.Op. and Order of Nov. 2, 1981 at 1 (Decker, J.).

On July 28, 1981, Havoco renewed its motion to add Sumitomo as a defendant, this time correctly alleging that Sumitomo was a New York corporation. By order dated November 2, 1981, the court granted Havoco leave to amend its complaint to name Sumitomo as a defendant. *See* Memo.Op. and Order of Nov. 2, 1981 at 2–3 (Decker, J.). On the following day, November 3, 1981, Havoco filed its amended complaint naming Sumitomo as a party in this action for the first time.

Before receiving Havoco's amended complaint, Sumitomo had received no notice of Havoco's intent to sue Sumitomo. Nor does the record suggest that anyone acting on behalf of Havoco ever informed Sumitomo, prior to filing the amended complaint, of Havoco's intent to add Sumitomo as a party defendant to this action. (*See* Deposition of Barry Van Der Meulen, Havoco's president, at 1438–40). Since the filing of its amended complaint, Havoco has filed a second, a third, and a fourth amended complaint. The variations among these complaints are not material to the issues before the Court.

### III.  *Prior Seventh Circuit Rulings*

In addition to the facts recited above, the Seventh Circuit's two prior rulings in this case are relevant to the issues before the Court. The first of these rulings arose from a motion for summary judgment filed by Sumitomo before Judge Decker in 1982. In that motion, Sumitomo contended that Havoco waived its claims that the defendants had fraudulently induced Havoco to enter into the assignment contract with R & F Coal. Specifically, Sumitomo argued that Havoco's acceptance of benefits under the assignment contract, through its settlement with R & F Coal, operated as a waiver of Havoco's fraudulent inducement claims.

Judge Decker granted Sumitomo's motion for summary judgment and Havoco appealed (*"Havoco I"*). On appeal, three issues were presented for consideration: whether Havoco had knowledge of the alleged fraud at the time it brought the breach of contract suit against R & F Coal; whether Havoco, as a matter of law, waived its claim for fraud and misrepresentation by affirming, through suit and settlement, its assignment contract with R & F Coal; and, whether the issue of waiver depended on Havoco's actual intent, making it a factual issue and, therefore, an issue inappropriately resolved by summary judgment. *Havoco I*, 731 F.2d at 1285.

As to the first issue regarding Havoco's knowledge, the Seventh Circuit upheld the district court's finding "that there was no material issue of fact concerning Havoco's knowledge of the alleged fraud." *Havoco I*, 731 F.2d at 1285. Specifically, the Seventh Circuit held that:

> Havoco demonstrated in its complaint filed in the Northern District of Illinois on January 10, 1978, that it then had substantially all the information which it now alleges provides the basis for the present claims of fraud, misrepresentation and breach of fiduciary duty. Havoco therefore clearly pursued its breach of contract claim without pursuing its fraud claims after it had knowledge of the fraud.

*Havoco I*, 731 F.2d at 1285–86. Although the Seventh Circuit determined that there was no issue of material fact concerning Havoco's knowledge of the alleged fraud, it held that knowledge of the fraud alone was not sufficient to constitute waiver as a matter of law. Because the record contained no evidence regarding Havoco's intent to waive its claims, the court remanded the case to the district court.

Following remand, Sumitomo filed a second motion for summary judgment on the waiver issue. In support of this motion, Sumitomo presented additional evidence on the issue of when Havoco became aware of the alleged fraud. The district court once again granted Sumitomo's motion for summary judgment, and Havoco once again appealed. This time, the Seventh Circuit prefaced its opinion by noting the similarity between the issues presented in the first

appeal and those presented in the second appeal:

Although the factual focus is different, the issues in this appeal are the same ones considered by this court in 1984; first, whether Havoco had knowledge of the fraud at the time it assigned the contract to R & F; second, whether Havoco, as a matter of law, waived its claim for fraud and misrepresentation when it assigned the contract.

*Havoco II*, 799 F.2d at 352.

In addressing the first issue regarding Havoco's knowledge, the Seventh Circuit began by summarizing the evidence which had been submitted below and the district court's holding:

Rather than focusing on the issues of Havoco's ability to rescind and intent to waive when it brought suit in 1978, the defendants submitted evidence that indicated Havoco knew of the fraud in 1976 before it ever entered into the assignment contract. The district court once again determined that there was no issue of material fact as to whether, by March 19, 1976, Havoco 'had full knowledge of the predicate acts which form the basis of its current complaint.'

*Havoco II*, 799 F.2d at 351–52.

The Seventh Circuit also noted the factual support for the district court's holding:

The district court made five specific observations relating to Havoco's knowledge: 1) in January, 1976, Havoco knew that Mr. Hill had recommended that R & F purchase the TVA contract; 2) by February 20, 1976, Havoco was aware that Mr. Hill had made misrepresentations and Mr. Van Der Muelen suspected and distrusted him; 3) at the February 20 meeting with the TVA, Havoco learned that Mr. Hill would represent R & F in negotiations with the TVA; 4) by March 5, 1976, Havoco was convinced that Mr. Hill was acting contrary to Havoco's interests; 5) in early March, 1976, Havoco was aware of and concerned about Sumitomo's cancellation of the revolving letter of credit and Havoco knew that neither Sumitomo nor Hill had disclosed vital financing information to the TVA.

*Havoco II*, 799 F.2d at 352 n. 4.

The Seventh Circuit then affirmed the district court's findings as to when Havoco became aware of the facts which now form the basis for its claims:

Upon examination of the record, we agree with the district court. Mr. Van Der Meulen's deposition testimony indicates that, prior to the assignment contract, he was aware of many of the facts which now form the basis of his complaint. The facts were at least sufficient to make it Havoco's 'duty to use ordinary diligence to make further investigations' before it assigned the contract.... Therefore, we agree with the district court and hold that there is no genuine issue of material fact concerning Havoco's knowledge of the alleged fraud when it assigned the TVA contract.

*Havoco II*, 799 F.2d at 352.

As to the second issue of waiver, the Seventh Circuit again concluded that certain factual questions remained regarding Havoco's intent to waive its claims. Because these factual issues precluded the court from holding, as a matter of law, that Havoco waived its claim for fraud and misrepresentation, the court reversed and remanded the case to the district court. Subsequently, the case was reassigned to this Court.

IV. *Sumitomo's Motion for Summary Judgment on Counts I, III, IV, and V of the Fourth Amended Complaint*

Based on the facts set forth above and the Seventh Circuit's prior rulings in this case, Sumitomo has filed a motion for summary judgment on Counts I, III, IV, and V of Havoco's fourth amended complaint. Specifically, Sumitomo contends that the Seventh Circuit's prior rulings, particularly its holding in *Havoco II*, establish that Havoco had knowledge of the facts underlying the claims asserted in Counts I, III, IV, and V as early as March 19, 1976. According to Sumitomo, this holding is the law of the case and is binding upon this Court. Given these facts, Sumitomo argues, the claims asserted by Havoco in Counts I, III, IV, and V are time-barred under Section 13–

205 of the Illinois Code of Civil Procedure because they were not filed until November 3, 1981, well after the five-year limitation period expired.[2]

In its three-page response, Havoco does not dispute the material facts. Indeed, Havoco concedes that "there can be no question that the Seventh Circuit determined that Havoco had knowledge of the fraud more than five years prior to its naming Sumitomo as a defendant." (Havoco's Response at 2). Havoco also concedes that "if [the Seventh Circuit's] conclusions are the law of the case, then, for purposes of this motion, Havoco knew that its loss of the TVA contract was wrongfully caused by March 19, 1976—more than five years before it named Sumitomo as a defendant in this action." (Havoco's Response at 3).

■ Nor does Havoco challenge Sumitomo's argument that the law of the case doctrine applies here. Instead, in a rather transparent attempt to circumvent the Seventh Circuit's holding in *Havoco II*, Havoco offers its own interpretation of the law of the case doctrine in the form of two equally meritless arguments. First, Havoco argues that if the Seventh Circuit's holding that Havoco knew of the alleged fraud prior to March 19, 1976 is the law of the case, then it is also the law of the case that the defendants actually engaged in the alleged fraudulent conduct. Without the benefit of authority or analysis, Havoco explains this novel interpretation of the law of the case doctrine as follows:

> The law of the case, however, cuts both ways. If Havoco's cause of action against [Sumitomo] accrued upon its learning of the above-referenced predicate acts, then knowledge of these acts alone can be said to constitute knowledge of wrongful conduct. Moreover, there should be no question that defendants engaged in that conduct.

(Havoco's Response at 3).

This interpretation of the law of the case doctrine, however, is totally devoid of mer-it. The distinction between holding that Havoco had knowledge of defendants' alleged wrongful acts which form the basis for this complaint and holding that the defendants actually engaged in wrongful conduct is so clear that it merits no extended discussion. In *Havoco II*, the Seventh Circuit never reached the merits of Havoco's fraud claims; rather, it held that there was no genuine issue of material fact "concerning Havoco's knowledge of the *alleged* fraud when it assigned the TVA contract." *Havoco II*, 799 F.2d at 352 (emphasis supplied). The Seventh Circuit's conspicuous use of the word "alleged" to modify the word "fraud" underscores the weakness of Havoco's argument.

■ Havoco's corollary argument, based upon its distorted or faulty interpretation of "the discovery rule," fares no better. The discovery rule, of course, "postpone[s] the starting of the period of limitations until the injured party knows or should have known of his injury." *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 414, 58 Ill.Dec. 725, 728, 430 N.E.2d 976, 979 (1981). Attempting to avail itself of the rule, Havoco argues that Illinois courts draw a distinction between knowledge of "innocent conduct" and knowledge of "wrongful conduct" for purposes of accrual of a cause of action. As explained by Havoco:

> On the other hand, if defendants seek to explain their conduct as innocent, this motion for summary judgment should be denied. A cause of action does not accrue when plaintiff has knowledge of *innocent* conduct. In Illinois, a cause of action accrues only when a plaintiff knows its injury to be wrongfully caused.

(Havoco's Response at 3). Thus, Havoco argues, only knowledge of "guilty conduct" triggers the statute of limitations. In support of this proposition, Havoco relies on *Knox College.*

**2.** Section 13–205 provides in relevant part: [A]ctions on unwritten contracts, express or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the posses-sion of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued.

Havoco's reliance on *Knox College*, however, is entirely misplaced. In *Knox College*, the Illinois Supreme Court briefly recounted the development of "the discovery rule." After reviewing its prior decisions addressing the parameters of the rule, the court reaffirmed that a cause of action accrues when "a party knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Knox College*, 88 Ill.2d at 415, 58 Ill.Dec. at 729, 430 N.E.2d at 980. To avoid confusion, the court carefully defined the term "wrongfully caused":

> [T]he term "wrongfully caused," as we have used that term in stating the rule, must be viewed as a general or generic term, and not a term of art.... *[T]he use of the term does not connote knowledge of negligent conduct or knowledge of the existence of a cause of action.* At some point the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. At that point, under the discovery rule, the running of the limitations period commences.

*Knox College*, 88 Ill.2d at 416, 58 Ill.Dec. at 729–30, 430 N.E.2d at 980–81 (emphasis supplied).

Indeed, the Illinois Supreme Court in *Knox College* went to great lengths to specifically reject the interpretation of the discovery rule which Havoco now advocates:

> 'We wish to emphasize that the rule we announce is *not* the same as a rule which states that a cause of action accrues when a person knows or should know of both the injury and the defendants' negligent conduct. Not only is such a standard beyond the comprehension of the ordinary lay person to recognize, but it assumes a conclusion which must properly await a legal determination. [Citation omitted]. Moreover, if knowledge of negligent conduct were the standard, a party could wait to bring an action far beyond a reasonable time when sufficient notice has been received of a possible invasion of one's legally protected interests.' [Citation omitted].

*Knox College*, 88 Ill.2d at 415, 58 Ill.Dec. at 729, 430 N.E.2d at 980 (quoting *Nolan v. Johns–Manville Asbestos*, 85 Ill.2d 161, 170–71, 52 Ill.Dec. 1, 5, 421 N.E.2d 864, 868 (1981)) (emphasis supplied).

■ In this case, the Seventh Circuit has explicitly held that Havoco had knowledge of the claims which it now seeks to assert against Sumitomo as early as March 19, 1976. *Havoco II*, 799 F.2d at 352. While Havoco may disagree with the Seventh Circuit's findings on this issue, that is irrelevant. The parties presented this issue on appeal, and the Seventh Circuit expressly decided the issue. Under the "law of the case" doctrine, the Seventh Circuit's holding is the law of the case and is binding on remand to this Court. *See Parts and Electric Motors, Inc. v. Sterling Electric, Inc.*, 866 F.2d 228, 231–32 (7th Cir.1988) (collecting other cases). Given the Seventh Circuit's holding and Havoco's admission that it named Sumitomo as a defendant in this action more than five years after March 19, 1976, the tort claims asserted by Havoco against Sumitomo in Counts I, III, IV, and V of the fourth amended complaint must, as a matter of law, be barred by the five-year limitations period contained in Section 13–205 of the Illinois Code of Civil Procedure, unless they "relate back" to the date of Havoco's initial complaint under Rule 15(c) of the Federal Rules of Civil Procedure.

Rule 15(c) governs "relation back" of amendments and provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment that party (1) has received such notice of the institution of the ac-

tion that the party will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c).

In this case, Havoco has not even attempted to argue that its amended complaint adding Sumitomo as a defendant in this action relates back to the filing of its initial complaint in 1981. The reason is obvious: Havoco cannot satisfy either one of the two prerequisites imposed by Rule 15(c) for amendments which add a new party.

First, Havoco cannot demonstrate that Sumitomo had such notice that it would not be prejudiced by having to defend Havoco's complaint on the merits, as required by Rule 15(c)(1). It is true that Sumitomo had *knowledge* of the institution of this lawsuit prior to the expiration of the statute of limitations because Havoco, in its initial complaint, named Sumitomo as a non-party co-conspirator, and Havoco served Sumitomo with a subpoena for production of documents. Nevertheless, knowledge of an existing lawsuit cannot be equated with notice that one will be named as a defendant in that suit. For purposes of Rule 15(c), notice must comply with Rules 4 and 5 of the Federal Rules of Civil Procedure. *See Stewart v. United States*, 655 F.2d 741, 742 (7th Cir.1981). Here, it is undisputed that Sumitomo received neither formal notice under the Federal Rules of Civil Procedure nor informal notice of Havoco's intentions to add Sumitomo as a defendant until after the limitations period had expired. Accordingly, allowing Havoco's complaint to "relate back" under Rule 15(c) at this late date would result in prejudice to Sumitomo by eliminating its statute of limitations defense. *See Stewart*, 655 F.2d at 742.

Likewise, Havoco cannot plausibly maintain that it would have added Sumitomo as a defendant within the limitations period "but for a mistake" concerning Sumitomo's identity, as required by Rule 15(c)(2). That Havoco, in its initial complaint, named Sum-

itomo as a non-party co-conspirator, rather than a defendant, forcefully demonstrates that Havoco knew of Sumitomo's alleged involvement when it filed its initial complaint. Thus, Havoco's failure to add Sumitomo as a defendant in this action in a timely fashion did not result from a case of mistaken identity, and Havoco's amendment adding Sumitomo as a defendant does not "relate back" under Rule 15(c). Absent "relation back," Havoco's claims in Counts I, III, IV, and V are time-barred as to Sumitomo because there is no genuine issue of material fact as to Havoco's failure to add Sumitomo as a defendant within the limitations period applicable to those counts. The Court therefore grants Sumitomo's motion for summary judgment on Counts I, III, IV, and V of the fourth amended complaint.

## V. *Havoco's Motion for Partial Summary Judgment on Count VI of the Fourth Amended Complaint*

In this motion, Havoco seeks partial summary judgment on the issue of Sumitomo's liability for breach of contract under Count VI of the fourth amended complaint, the only surviving count against Sumitomo. In Count VI, Havoco alleges that Sumitomo breached the Sales Agency Agreement ("the agreement") entered into by Havoco and Sumitomo on or about March 3, 1975. Specifically, Count VI charges that Sumitomo breached the agreement in five ways: (a) by failing to provide an irrevocable, transferable, revolving letter of credit to Havoco, in violation of paragraph 6 of the agreement; (b) by representing R & F Coal as its agent under the Havoco/TVA contract, in violation of paragraph 2 of the agreement; (c) by representing R & F Coal as its agent under the Havoco/TVA contract, in violation of paragraph 1 of the agreement; (d) by failing to make prompt transmittal of TVA premium payments to Havoco, in violation of paragraph 9 of the agreement; and, (e) by failing to make prompt transmittal to Havoco of TVA payments for coal, in violation of paragraph 5 of the agreement.

Havoco's motion for partial summary judgment is directed only toward the first

of these five acts of breach. According to Havoco, summary judgment is appropriate on the issue of Sumitomo's failure to post a revolving letter of credit under the plain language of paragraph 6 of the agreement. Paragraph 6 of the agreement provides in relevant part:

> Sumitomo agrees that it shall, from time to time, establish an irrevocable, transferable thirty-day revolving non-cumulative letter of credit for $5,500,000 either with The Continental Illinois National Bank & Trust Co. or designating it as the paying bank for the term of the March 3, 1975 long-term commitment providing for payment to Havoco within seven (7) days after presentment by Havoco of invoices and barge bills of lading issued by M/G Transport Services, Inc. and analysis reports provided for hereinbelow deducting from the price of coal per the long-term commitment $0.85 per ton stipulated above and $0.50 per ton for a reclamation account fund to be established by TVA, per the long-term commitment.

Havoco claims that there is no genuine issue of material fact as to either the terms of paragraph 6 of the agreement or Sumitomo's failure to post a revolving letter of credit in accordance with the clear and unambiguous language of paragraph 6 of the agreement.

In its response, Sumitomo does not dispute the terms of paragraph 6 of the agreement. Nor does Sumitomo deny that it did not post a revolving letter of credit in strict accordance with the terms of paragraph 6 of the agreement. Nevertheless, Sumitomo contends that partial summary judgment on Count VI is inappropriate for three reasons: (1) there are numerous disputed issues of material fact relating to the letter of credit arrangements; (2) based on the undisputed absence of any damages caused by Sumitomo's alleged breach of the agreement, liability for breach of contract is precluded as a matter of law; and, (3) Rule 56 of the Federal Rules of Civil Procedure does not authorize Havoco to seek summary judgment on only part of its breach of contract claim. Although Sumitomo maintains that partial summary judg-

ment is inappropriate on all three of these grounds, we restrict our discussion to the first ground raised by Sumitomo because it is dispositive under the mandate of Rule 56.

Under Rule 56, summary judgment is only appropriate if the parties' submissions "show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). In this case, however, the record reveals that the parties differ over a number of issues of fact relating to Sumitomo's liability for breach of contract under Count VI, and some, but not all, of the issues raised by Sumitomo are genuine issues of material fact.

■ The first factual issue raised by Sumitomo relates to an alleged oral agreement between the parties which varied the terms of the written agreement. Essentially, Sumitomo contends that paragraph 6 of the agreement is merely one of the instruments which reflects the letter of credit arrangements between Sumitomo and Havoco. According to Sumitomo, the terms of paragraph 6 were modified by an oral agreement made between Sumitomo and Havoco at the same time as the execution of one of the written sales agency instruments. By virtue of this alleged oral agreement, Sumitomo claims that it was only required to establish a non-revolving letter of credit. In accordance with this oral agreement, from March 1975 through the end of Havoco's long-term commitment for coal shipments to TVA in March 1976, Sumitomo posted an unbroken succession of monthly irrevocable letters of credit.

In response, Havoco not only unequivocally denies that it entered into such an oral agreement with Sumitomo, but also disputes the accuracy of Sumitomo's translation which refers to this alleged oral agreement. Moreover, Havoco argues that even if such an oral agreement were made, the parol evidence rule would bar admission of this evidence because Sumitomo admits that this oral agreement was made "at the same time as," rather than subsequent to, the execution of the written sales agency agreement. We agree.

In Illinois, "[t]he parol evidence rule provides that if an instrument appears complete, certain, and unambiguous, then parol evidence of a prior or *contemporaneous* agreement is inadmissible to vary the terms of that instrument." *McKown v. Davis*, 118 Ill.App.3d 315, 317, 73 Ill.Dec. 837, 839, 454 N.E.2d 1086, 1088 (3rd Dist. 1983) (emphasis supplied). *See also Main Bank of Chicago v. Baker*, 86 Ill.2d 188, 200, 56 Ill.Dec. 14, 19, 427 N.E.2d 94, 99 (1981) (parol evidence inadmissible to show that an obligation under a note, absolute on its face, was conditional). While Sumitomo correctly points out that parol evidence is admissible to establish a *subsequent* modification of a contract, in this case, Sumitomo consistently states that the alleged oral agreement permitting Sumitomo to establish a non-revolving letter of credit was made *"at the same time as"* the written sales agency agreement. Given this obvious distinction, Sumitomo's claim that the parties entered into an oral agreement contemporaneously with the written sales agency agreement and that the alleged oral agreement varied the terms of the written agreement is disingenuous at best. As a practical matter, if the parties had orally agreed to alter the terms of the written agreement at the time of execution, then they could have easily deleted the word "revolving," substituted the word "non-revolving" by interlineation, and initialled the changes *at the time of execution*, rather than executing a written agreement which, in effect, contained terms contrary to a contemporaneous oral agreement.

Indeed, the parol evidence rule was designed to eradicate the dilemma caused by this latter situation. As observed by the court in *Kurti v. Fox Valley Radiologist, Ltd.*, 124 Ill.App.3d 933, 941, 80 Ill.Dec. 236, 242, 464 N.E.2d 1219, 1225 (2d Dist. 1984):

> [W]hile a written contract may subsequently be orally modified [citation omitted], giving effect to contemporaneous oral modifications of apparently complete written instruments would be potentially destructive of certainty in the interpretation of contracts and, according to some

writers, would run afoul of the parol evidence rule.

The same reasoning applies with equal force to this case. Here, the written agreement between Sumitomo and Havoco unambiguously states that Sumitomo *"shall,* from time to time, establish an irrevocable, transferable thirty-day *revolving* non-cumulative letter of credit...."* (Sales Agency Agreement at ¶ 6) (emphasis supplied). To give effect to Sumitomo's belated claim that a contemporaneous oral modification contradicted the clear terms of the written agreement not only would undermine the integrity of the written agreement, but also would vitiate the parol evidence rule. Thus, to the extent that Sumitomo has attempted to create a genuine issue of material fact by raising the specter of this alleged contemporaneous oral agreement, Sumitomo fails.

In spite of its failure, Sumitomo has raised two genuine issues of material fact pertaining to its liability under the written agreement which preclude entry of summary judgment. First, Sumitomo asserts that even if its failure to post a revolving letter of credit deviated from the strict terms of paragraph 6 of the agreement, Havoco acquiesced in Sumitomo's deviation and, therefore, Havoco waived any right to insist that Sumitomo post a revolving letter of credit.

Illinois law recognizes that one contracting party's acquiescence in the other contracting party's deviation from strict compliance with the terms of a contract can result in waiver. *See Whalen v. K–Mart Corp.*, 166 Ill.App.3d 339, 343, 116 Ill.Dec. 776, 779, 519 N.E.2d 991, 994 (1st Dist.), *appeal denied*, 121 Ill.2d 587, 122 Ill.Dec. 448, 526 N.E.2d 841 (1988); *Anderson v. Farmers Hybrid Co., Inc.*, 87 Ill.App.3d 493, 497, 42 Ill.Dec. 485, 488, 408 N.E.2d 1194, 1197 (3d Dist.1980). "Waiver may be proven by words or deeds of the party against whom waiver is invoked that are inconsistent with an intention to insist on that party's contractual rights." *Chicago College of Osteopathic Medicine v. George A. Fuller Company*, 776 F.2d 198, 202 (7th Cir.1985) (citing Illinois law).

Havoco, of course, vigorously denies that it acquiesced in Sumitomo's failure to provide a revolving letter of credit. As evidence of its refusal to acquiesce, Havoco points out that on or about October 8, 1975, John M. Janewicz, acting on behalf of Havoco, sent a letter to Sumitomo which quoted paragraph 6 of the agreement and advised Sumitomo that Havoco deemed Sumitomo's failure to establish a letter of credit in accordance with paragraph 6 a breach of the agreement. Sumitomo admits receiving such a letter and also admits that as of October 21, 1975, it was aware of Havoco's contention that there was some trouble with the letter of credit requirements. Nevertheless, Sumitomo asserts that Havoco's conduct in continuing to accept millions of dollars in funds drawn on the *nonrevolving* letter of credit posted by Sumitomo between October 1975 and March 1976 —*after* notifying Sumitomo of its purported breach of contract—demonstrates Havoco's acquiescence in Sumitomo's deviation from the strict terms of paragraph 6 of the agreement. For its part, Havoco counters that its continued acceptance of the proceeds of the non-revolving letter of credit was not inconsistent with its right to insist that Sumitomo post a revolving letter of credit.

Reasonable minds, however, could easily differ on this issue; therefore, it is obviously a question of fact. We note that Judge Decker, in denying Sumitomo's prior motion for summary judgment on Havoco's breach of contract claim against Sumitomo, specifically concluded that there was "clearly a basic factual dispute as to Havoco's 'acquiescence' " in Sumitomo's posting of a non-revolving, rather than a revolving, letter of credit. *See* Mem.Op. and Order of Feb. 22, 1983 at 4 (Decker, J.). That statement still holds true and precludes entry of summary judgment on Count VI.

Acquiescence is not the only genuine issue of material fact raised by Sumitomo. Sumitomo also claims that Havoco waived all of its claims against Sumitomo, including the breach of contract claim contained in Count VI, by voluntarily assigning the TVA contract to R & F Coal at a time when Havoco had full knowledge of Sumitomo's alleged wrongdoing.

In response, Havoco argues that its assignment of the TVA contract was not inconsistent with Havoco's right to seek damages for Sumitomo's breach of contract. To bolster this argument, Havoco points to the most recent appeal taken on the issue of waiver. According to Havoco, in *Havoco II*, the Seventh Circuit "did not find there to be evidence of Havoco's waiver of *all* of its claims," and "[i]f anything the Court concluded that the record was insufficient to find a waiver."

This statement, however, oversimplifies the Seventh Circuit's most recent findings on the issue of Havoco's waiver of its claims. Indeed, the parties have now raised this issue twice on appeal in some fashion. Yet, on each occasion, the Seventh Circuit has stated that while it could not conclude that Havoco had waived its claims *as a matter of law*, the issue of waiver was nonetheless *factually disputed.* *See Havoco I*, 731 F.2d at 1285; *Havoco II*, 799 F.2d at 352. In *Havoco I*, the Seventh Circuit held that the district court had improperly granted summary judgment in favor of the defendants on the issue of waiver because certain questions of *fact* remained as to Havoco's intent and waiver:

> We therefore believe that summary judgment was inappropriately granted and that questions of fact as to Havoco's intent and the existence of waiver remain. The existence of waiver must here turn on Havoco's intent in bringing the lawsuit against R & F Coal after it knew of the alleged fraud. It is entirely possible that the *finder of fact* will determine that there is waiver on these facts or that Havoco knew of the alleged fraud before 1978. But we think that the Supreme Court of Illinois would not find intentional waiver *as a matter of law*, nor can we do so.

*Havoco I*, 731 F.2d at 1294 (emphasis supplied).

Considering the same issues, but with a different factual focus, the Seventh Circuit reached the same conclusion in *Havoco II*.

Once again holding that the district court had improperly granted summary judgment in favor of the defendants on the issue of waiver, the Seventh Circuit reiterated that "[i]ntent is a question of fact." *Havoco II*, 799 F.2d at 354. Contrary to Havoco's representation, the court in *Havoco II* also noted that "Havoco could waive its right to sue for *any* of the alleged unlawful conduct." *Havoco II*, 799 F.2d at 354 n. 6 (emphasis supplied).

In sum, despite Havoco's claims to the contrary, Sumitomo has raised at least two genuine issues of material fact regarding its contractual liability under Count VI. These genuine issues of material fact obviously preclude entry of partial summary judgment under Rule 56. Accordingly, this Court denies Havoco's motion for partial summary judgment on Count VI. Because the Court denies Havoco's motion for summary judgment on the first of the three grounds raised by Sumitomo, we do not address the other two grounds raised in Sumitomo's response.

## VI. *Defendants' Motions to File Amended Answers*

■ Sumitomo has filed a motion for leave to file an amendment to its answer to Havoco's fourth amended complaint. Hill and Hilco have similarly filed a motion for leave to file amended answers to the fourth amended complaint. Although these motions are styled slightly differently, in both, the respective defendants seek to amend their answers to plead the additional affirmative defense of release.[3]

The same allegations form the basis for both motions. The defendants assert that during his deposition on November 15, 1988, Barry Van Der Meulen, president of Havoco, testified that on March 19, 1976, he, on behalf of Havoco, executed a general release in favor of R & F Coal as part of a settlement of a lawsuit brought in 1976 by R & F Coal against Havoco. *R & F Coal Company v. Havoco*, 76 C 969 (N.D. Ill.1976). Counsel for the defendants re-

quested a copy of this release from Havoco both during Van Der Meulen's deposition and during the course of written discovery. Although Havoco produced a copy of the settlement agreement between Havoco and R & F Coal, as well as copies of releases executed by R & F Coal in favor of Havoco and Van Der Meulen, Havoco never produced a copy of the release executed by Van Der Meulen in favor of R & F Coal. Nevertheless, in preparation for filing the final pretrial order in this case, Havoco included the March 19, 1976 release ("the release") in favor of R & F Coal on its list of trial exhibits. On June 5, 1989, after noticing that Havoco had listed the release as one of its trial exhibits, counsel for Sumitomo obtained a copy of the release from Joan Hall, counsel for R & F Coal. Shortly thereafter, the defendants filed these motions, seeking leave to file amended answers to include the additional affirmative defense of release.

The defendants predicate their respective motions on Rule 15(a) of the Federal Rules of Civil Procedure. Rule 15(a) governs amendment of pleadings and provides that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). In interpreting this rule many years ago, the Supreme Court emphasized that absent special circumstances, leave to amend should be "freely given":

> If the underlying facts or circumstances relied upon by a [party] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. —the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The Sev-

---

**3.** In addition, Hill seeks to correct a typographical error in his answer which incorrectly identifies those counts of Havoco's fourth amended complaint to which his affirmative defense of waiver is directed. Havoco has not objected to this portion of Hill's motion and, therefore, we grant this portion of Hill's motion without discussion.

enth Circuit has continued to follow this liberal interpretation of Rule 15(a). *See Knapp v. Whitaker*, 757 F.2d 827, 849 (7th Cir.), *cert. denied*, 474 U.S. 803, 106 S.Ct. 36, 88 L.Ed.2d 29 (1985) (citing *Foman*).

In this case, however, Havoco contends that Rule 15(a) should not be so liberally applied. Stripped of its editorial trimmings, Havoco's response offers three reasons why leave to amend should not be "freely given" in this case. First, Havoco asserts that contrary to defendants' representations, they have had notice of the release in question since at least November, 1981 and possibly earlier. Second, Havoco cites the defendants' "undue delay" in bringing this motion. Finally, Havoco asserts that granting the defendants' motion at this juncture will prejudice Havoco.

Upon close scrutiny, however, each of Havoco's claims collapses under its own weight. Havoco's first claim—that the defendants had notice of the release in question as early as November, 1981—is a rather lame attempt to obfuscate the issue raised by the defendants' motions. In their motions, the defendants claim that Havoco did not produce the release in question in response to discovery requests or requests made by the defendants' respective attorneys during Van Der Meulen's deposition. Significantly, Havoco does not offer any excuse for its failure to do so. Instead, Havoco asserts that the release in question was marked as an exhibit to Van Der Meulen's deposition, which was taken back in November of 1981. While that may be true, marking a document as an exhibit to a deposition does not satisfy a litigant's obligation to produce documents in response to discovery requests. Thus, Havoco's attempt to shift the blame to the defendants merely underscores its own lack of candor and the degree of acrimony between the parties to this litigation; it adds nothing to the Court's analysis.

Havoco's second claim of "undue delay" on the part of the defendants is not only disinguous, but is also exaggerated. As the defendants point out in their respective replies, Havoco did not file its fourth amended complaint until September 20, 1988; therefore, the defendants could have filed answers asserting the affirmative defense of release without leave of court as late as October 10, 1988. The defendants filed these motions on June 22, 1989, eight months after the deadline for answering the fourth amended complaint and seventeen days after they received Havoco's list of exhibits for the final pretrial order designating the release in question as an exhibit. Given these undisputed facts, at most, the defendants can be charged with a "delay" of approximately eight months, and at least, they can be charged with a "delay" of seventeen days. In either case, the period of delay does not warrant denial of leave to amend their answers.

Perhaps recognizing this, Havoco finally contends that although the defendants' delay, standing alone, may not warrant denial of their motions to amend, the defendants' delay, coupled with the undue prejudice which will result to Havoco if the defendants are granted leave to amend, militates in favor of denying the defendants' motions. According to Havoco, "prejudice to [it] is manifest" for several reasons. Initially, Havoco claims that the release does not present a simple question of law, as claimed by the defendants. On the contrary, Havoco argues, the release involves a question of intent, which will further complicate this already complex case. Assuming that the release involves a question of intent, Havoco asserts that if the defendants are now permitted to assert the affirmative defense of release, Havoco will have to reexamine "thousands of relevant documents," reread depositions, and depose other witnesses. Furthermore, Havoco states that certain witnesses with knowledge of the release are now dead. One of the witnesses, an attorney for Havoco, died in 1985. The other witness, the owner of R & F Coal, died in 1988. Havoco maintains that all of these factors, along with the prospect for additional discovery and another motion for summary judgment, amply demonstrate the prejudice that will result to Havoco if this Court permits the defendants to amend their answers to assert the affirmative defense of release.

This Court disagrees on all counts. We reject Havoco's characterization of the release defense as one which will inject factual, complicated issues into this case. The release in question, which barely fills a single page, presents a simple question of law. Accordingly, Havoco overplays its claim that it will have to reexamine thousands of relevant documents and reread depositions if the Court permits defendants to amend their answers.

Havoco likewise overplays its claim that certain witnesses who have knowledge of the release are now dead and, therefore, not available to testify. Even if the defendants had asserted the release defense in October of 1988, as they were entitled to do, these witnesses would not have been available. If these witnesses would have been unavailable when the defendants filed their responsive pleadings to Havoco's fourth amended complaint, then their unavailability now certainly does not justify a finding of prejudice after the fact.

Moreover, Havoco has known about this release for approximately fourteen years. If Havoco failed to anticipate that the defendants might raise the release as a defense at some point, Havoco has only itself to blame. This litigation has dragged on for nine years, and it is now set for trial. At this juncture, the Court will not reopen discovery, nor will it entertain another motion for summary judgment. This should alleviate Havoco's fears that the defendants' assertion of the defense of release will delay these proceedings.

Though Havoco has established its frustration with this litigation, it has failed to establish that the defendants unduly delayed bringing their respective motions, or that it will suffer "undue prejudice" if amendment is permitted. Accordingly, the Court grants the defendants' respective motions to amend their answers for the sole purpose of asserting the additional affirmative defense of release.

### VII. *Conclusion*

For the reasons outlined, the Court grants Sumitomo's motion for summary judgment on Counts I, III, IV, and V of Havoco's fourth amended complaint and enters judgment in favor of Sumitomo and against Havoco on those counts; denies Havoco's motion for partial summary judgment on Count VI of its fourth amended complaint; grants Sumitomo's motion for leave to file an amendment to its answer to the fourth amended complaint; and grants the motion of Hill and Hilco for leave to file amended answers to the fourth amended complaint.

IT IS SO ORDERED.